FILED
SUPERIOR COURT
OF GUAM

2026 JUL 23 PM 4:00

CLERK OF COURT
By:_____

**IN THE SUPERIOR COURT OF GUAM**

| | |
|---|---|
| MOHAN BHOJWANI,<br><br>      Plaintiff,<br><br>vs.<br><br>JAMES HENLY,<br><br>      Defendant. | Civil Case No. CV0390-25<br><br>**DECISION AND ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT** |

## INTRODUCTION

This matter came before the Honorable John C. Terlaje on April 28, 2026, for a Motion Hearing regarding Plaintiff's Motion for Summary Judgment. Attorney Charles McDonald appeared on behalf of Plaintiff Mohan Bhojwani. Attorney Heidi Simpson appeared on behalf of Defendant James Henly. After reviewing the record, relevant law, and arguments from the parties, the Court **GRANTS** in part and **DENIES** in part the Motion for Summary Judgment.

## BACKGROUND

Bhojwani filed his Complaint on May 30, 2025. Henly filed his Answer and Counterclaim on July 14, 2025. Bhojwani filed his Motion for Summary Judgment on March 16, 2026. Henly filed his Opposition to Plaintiff's Motion for Summary Judgment on April 10, 2026. Bhojwani filed his Reply to Defendant's Opposition on April 24, 2026. The Court heard oral arguments for the Motion for Summary Judgment on April 29, 2026.

Page 1 of 13

## STATEMENT OF FACTS

1. Henly signed a Contract of Sale on June 1, 2018 for the following lot:

> Lot Number 6, Block Number 4, Tract 63006 (formerly of Lot 10102-18), Municipality of Yigo (formerly municipality of MACHANAO), Territory of Guam (Estate No, 812 under basic lot no. 10112 sub-urban), as said lot is marked and designated on map drawing No. NI-01-02 (LM No. 244-FY2001), Prepared by Nestorio C. Ignacio PLS #65 dated July 25, 2001 & recorded on September 5, 2001, under instrument No. 643408 in the Department of Land Management, Government of Guam.
>
> AREA: 929 ± Square Meters
>
> ("Lot 6").

Pl. Bhojwani's Memorandum of Points and Authorities in Support of Mot. Sum. J. ("Mot. Sum. J.") at 2 (Mar. 16, 2026); D.'s Opp. to Pl's Mot. Sum. J. ("Opp.") at 2 (Apr. 10, 2026). Bhojwani signed the Contract of Sale on July 1, 2019. Mot. Sum. J. at 1–2; Opp. at 2. Bhojwani recorded the Contract on September 24, 2019. Mot. Sum. J. at 1–2; Opp. at 2.

2. Henly has limited English proficiency. Opp. at 3; Pl.'s Reply to D.'s Opp. to Pl.'s Mot. Sum. J. ("Reply") at 2. However, Henly communicated with Bhojwani in English to create the Contract. Pl. Mohan Bhojwani's Statement of Issues and Undisputed Material Facts in Support of Mot. Sum. J. ("Pl.'s Decl.") at 3; Opp. 2–3. Henly retained a signed copy of the Contract. Pl.'s Decl. at 7–9; Opp. at 5. Henly did not ask for translation assistance. Pl.'s Decl. at 3; Opp. at 6.

3. Bhojwani claims that he did not seek out Henly to create this Contract; rather, Henly reached out to Bhojwani so that he could live next to his relatives in a nearby lot. Pl.'s Decl. at 2.

4. The Contract priced Lot 6 at $72,000. Opp. 6–7; Reply 7. The Contract vested the property to Henly only upon full payment of the $72,000. Pl.'s Decl. at 3; Opp. 7. Under the Contract, Henly was obligated to pay Bhojwani $700 a month. Pl.'s Decl. at 3; Decl. in Support of D.'s Opp. to Pl.'s Mot. Sum. J. ("D.'s Decl.") at 2 (Apr. 10, 2026). Under the Contract, if Henly failed to pay the $700 for sixty days, Henly would be in default. Mot. Sum. J. at 2; Opp. at 2. Additionally, Henly would owe interest on the property at 10%, totaling approximately $168,000 in twenty years. Opp. at 7; Reply at 8.

5. In 2018, a tax assessment appraised Lot 6 at $27,591. D.'s Decl. at Ex. B.; Reply at 7.

6. One of the Contract terms granted Bhojwani a power of attorney over Henly. Mot. Sum. J. at 10; Opp. at 9; Reply at 9–10.

7. Bhojwani claims that Henly took possession of Lot 6 in June or July of 2018. Mot. Sum. J. at 2.

8. From July 2018 to May 2022, both parties agree that Henly paid Bhojwani $700 a month, totaling $32,200. Mot. Sum. J. at 14; Reply at p. 11. However, Henly states that the first payment was in June 2018 and the last payment was in October 2023. Opp. at 2.

9. Henly states that he paid Bhojwani outside of the monthly payments on more than one occasion. Opp. at 3, 11–12. He claims that Bhojwani did not record some or all of these payments. *Id.* Henly attaches two additional receipts that Bhojwani did not initially include. D.'s Decl. at 3, Ex. A. Bhojwani did eventually include those receipts and an

additional receipt he did not include as evidence in his Motion for Summary Judgment. Reply at 11–12. Henly claims he paid Bhojwani a total of $2,460 since 2022 that are not reflected in Bhojwani's initial filings. D.'s Decl. at 3.

10. Sometime during the COVID-19 Pandemic, Henly fell behind on payments. D.'s Decl. at 2; Mot. Sum. J. at 3.

11. After Henly fell behind on payments, Bhojwani offered Henly a payment plan that increased the frequency of payments to once every two weeks. D.'s Decl. at 3; Mot. Sum. J. at 3; Pl.'s Decl. at 4. Henly also alleges that this payment plan increased the cost of the property to $93,262. D.'s Decl. at 3. Henly alleges that he did not sign this new payment plan, but Bhojwani alleges that Henly did sign the payment plan. D.'s Decl. at 3; Mot. Sum. J. at 3; Pl.'s Decl. at 4.

12. Bhojwani executed a cancellation of the Contract on May 31, 2024 using the power of attorney granted in the Contract to sign on behalf of Henly. Pl.'s Decl at 4; Opp. at 9–11.

13. Henly continues to occupy Lot 6. Mot. Sum. J. at 3; Reply at 11.

## DISCUSSION

Summary judgment is granted when the movant can show there is no genuine issue of material fact in "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits. . ." Guam R. of Civ. P. 56(a); *Gayle v. Hemlani*, 2000 Guam 25 ¶ 20. "A material fact is one that is relevant to an element of a claim or defense and whose existence might affect the outcome of the suit." *Edwards v. Pac. Fin. Corp.*, 2000 Guam 27 ¶ 7; *Bank of Guam v. Flores*, 2004 Guam ¶ 7. The Court must view the evidence and draw inferences in the light most favorable to the non-movant. *Edwards*, 2000 Guam 27 ¶ 7.

Here, Bhojwani has moved for summary judgment. He argues that the undisputed facts show that the parties entered into a valid Contract of Sale that bound Henly to the Contract price, the terms of payment, and the remedies available to the seller. Mot. Sum. J. at 4–5. Bhojwani argues that the Contract formation was not unconscionable because Henly's argument does not sufficiently prove procedural and substantive unconscionability. *Id.* at 6–8. Bhojwani argues that Henly breached the Contract of Sale because he failed to pay as required by the Contract and did not cure his breach. *Id.* at 8–9. Bhojwani claims he validly cancelled the Contract of Sale because the Contract granted him a power of attorney that allowed him to sign on behalf of Henly to cancel the Contract. *Id.* at 9–11. Therefore, Bhojwani argues, Henly cannot continue to occupy Lot 6. *Id.* at 11–12. Bhojwani argues that because Henly has continued to occupy Lot 6 since the cancellation of the Contract, Henly has been unjustly enriched, and therefore owes Bhojwani additional damages and interest and must leave Lot 6. *Id.* at 13–14.

In response, Henly argues that there are sufficiently disputed material facts as to make a summary judgment inappropriate. Opp. at 1. Henly argues there are sufficient material facts to conclude the Contract is unconscionable both procedurally and substantively. *Id.* at 4–9. Henly argues that if the Contract was valid, the unilateral termination was invalid. *Id.* at 9–11. Henly also argues that because he has paid Bhojwani more than the amount set by the 2018 tax assessment, Henly is not unlawfully occupying the property. *Id.* at 11. Finally, Henly argues that the issue of damages is not as clear as Bhojwani claims it is, so summary judgment on this matter would be inappropriate. *Id.* at 12.

In his reply, Bhojwani offers additional factual and legal clarification to strengthen his initial arguments. *See* Reply. Bhojwani argues that although he did initially not include all of the

receipts, the additional receipts provided by Bhojwani in his reply complete all payments Henly made. *Id.* at 10–12. But Bhojwani argues that these additional receipts would not prevent summary judgment from being granted at this time. *Id.*

The Court agrees in part and disagrees in part with Bhojwani's arguments. The Court will address the issues in this order: first, whether the Contract is unconscionable, then whether the cancellation was valid, and finally whether damages can be assessed by the Court at this time. The issue of whether Henly breached the Contract by failure to pay is undisputed by both parties. Therefore, the Court will not discuss this issue because there is no factual or legal dispute.

## I.  Whether the Contract is unconscionable.

Henly has failed to show that the Contract was both procedurally and substantively unconscionable. An unconscionable contract cannot be enforced. 13 GCA § 2302; *Pangelinan v. Camacho*, 2008 Guam 4 at n. 11. Guam looks to California courts to interpret unconscionability. *See Pangelinan*, 2008 Guam 4. Considering Guam's past reliance on California interpretations of unconscionability, this Court will adopt California's dual-element framework. *OTO, LLC v. Kho*, 447 P.3d 680, 689 (Cal. 2019). "A contract is unconscionable if one of the parties lacked a meaningful choice in deciding whether to agree and the contract contains terms that are unreasonably favorable to the other party." *Id.* "The procedural element addresses the circumstances of contract negotiation and formation . . . [s]ubstantive unconscionability pertains to the fairness of an agreement's actual terms." *Id.* at 690 (quoting *Pinnacle Museum Tower Assn. v. Pinnacle Market Development (US), LLC*, 282 P.3d 1217 (Cal. 2012)). "Both procedural and substantive unconscionability must be shown for the defense to be established, but 'they need not be present in the same degree.'" *Id.* (quoting *Armendariz v. Found. Health Psychcare*

*Servs., Inc.,* 6 P.3d 669, 696 (Cal. 2000)). "The burden of proving unconscionability rests upon the party asserting it." *Id.*

After reviewing the facts, the Court finds that Henly has not sufficiently shown that the Contract is unconscionable. While the Contract may be substantively unconscionable, the Contract is not procedurally unconscionable according to the facts given to the Court. Therefore, the Contract is valid.

### A. Procedural Unconscionability

"The procedural element of an unconscionable contract generally takes the form of a contract of adhesion, 'which, imposed and drafted by the party of superior bargaining strength, relegates to the subscribing party only the opportunity to adhere to the contract or reject it.'" *Discover Bank v. Superior Court,* 113 P.3d 1100, 1108 (Cal.2005) (quoting *Little v. Auto Steigler, Inc.,* 63 P.3d 979 (Cal.2003), cert. den. *sub nom. Auto Stiegler, Inc. v. Little,* 540 U.S. 818).

Henly argues that the Contract is procedurally unconscionable based on two separate arguments. First, Henly argues that because he is not an English speaker, he did not understand or read the Contract before he signed it. And, Henly argues that Bhojwani should have known that Henly was not able to understand English because it would have been apparent to him during the contract negotiation. Second, Henly argues that because Bhojwani signed the Contract one year after Henly did so, Bhojwani intended only to bind Henly and not himself, which would be unconscionable. Henly's arguments, however, are not sufficient to show procedural unconscionability.

### i. Non-Native Speaker

A party who signs a contract without reading, understanding, or speaking the language of the agreement is still bound by that contract. *M Electric Corp. v. Phil-Gets (Guam) Int'l Trading Corp.*, 2012 Guam 23 ¶ 31; *Morta v. Korea Ins. Corp.*, 840 F.2d 1452, 1458–60 (9th Cir. 1988). A non-English speaker has an affirmative duty to inform the other party that he or she needs an interpreter. *M Electric Corp.*, 2012 Guam 23 ¶ 31.; *Randas v. YMCA of Metro. Los Angeles*, 17 Cal. App. 4th 158, 163 (1993); *Caballero v. Premier Care Simi Valley LLC*, 69 Cal. App. 5th 512, 518–20 (2021).

Henly fails to show that there are material disputed facts sufficient to establish procedural unconscionability in the formation of the Contract. Henly argues that because he is not a native English speaker, and that this should have been apparent to Bhojwani that the contract formation was procedurally unconscionable. However, Henly had a duty to inform Bhojwani that he needed translation help before signing the Contract. Henly is bound by his signature on the document even though he did not understand the document. Henly could have remedied his deficiency in language by asking for translation assistance and chose not to. Therefore, this argument for procedural unconscionability fails.

### ii. Delayed Signature

A contract requires offer, acceptance, and consideration. 18 G.C.A. § 85102; *Unified Interest v. PacAir Properties, Inc.*, 2017 Guam 9 ¶ 30. While signatures are an indication of acceptance, the lack of a signature does not negate the formation of a contract. *Angell v. Rowlands*, 85 Cal.App.3d 536, 541–42 (1978). Only when the lack of a signature shows the intent not to accept the contract does that lack show that a contract was not formed. *Id.*

Here, Bhojwani acted as if he intended to be bound by the Contract even though he did not sign the Contract until a year after Henly had done so. Bhojwani allowed Henly to take possession of the property, giving him the benefit promised under the terms of the Contract. Bhojwani collected the payment per the terms of the Contract during the year the Contract remained unsigned by him. Therefore, the delayed signature does not show that there was procedural unconscionability. And Henly's procedural unconscionability argument fails.

**B. Substantive Unconscionability**

"Substantive unconscionability pertains to the fairness of the agreement's actual terms and to assessments of whether they are overly harsh or one-sided." *OTO, LLC*, 447 P.3d 680 at 690 (quoting *Pinnacle*, 282 P.3d 1217 at 1232). "A contract term is not substantively unconscionable when it merely gives one side a greater benefit; rather, the term must be so one-sided as to shock the conscience." *Pinnacle*, 282 P.3d 1217 at 1232 (cleaned up) (quoting *24 Hour Fitness, Inc. v. Superior Court*, 66 Cal.App. 4th 1199, 1213 (1998)).

Henly argues that the Contract is substantively unconscionable for two reasons. First, Henly argues that the terms of the Contract are one-sidedly in favor of Bhojwani as to be shocking. Second, Henly argues that the price agreed to for the land is so much higher than the tax assessed value as to shock the conscience. The Contract may be substantively unconscionable. Even though, as Bhojwani states, a seller-financed contract for land sale will have more contract terms in favor of the seller, the inclusion of a general power of attorney favors the possibility of substantive unconscionability. However, because Henly failed to show procedural unconscionability, Henly failed to satisfy the two-pronged test set forth by California law. The Contract is therefore valid.

## II. Whether the contract termination was valid.

Henly argues that the Contract's termination was invalid because the creation of the power of attorney through the Contract was too unlimited and unconscionable. Bhojwani argues that the cancellation of the Contract using the power of attorney was within the valid terms of the Contract.

The Court disagrees with Bhojwani. Henly has presented sufficient facts as to the question whether the cancellation was valid. Therefore, it would be inappropriate at this stage to grant summary judgment on the issue of the cancellation's validity.

"A power of attorney is simply 'a formalized agency agreement.' Thus, [a power of attorney] is governed generally by Guam's agency statutes." *Torres v. Torres*, 2005 Guam 22 ¶ 10 (citing *Estate of Swanson v. United States*, 46 Fed. Cl. 388, 391 (2000)). "An *agent* is one who represents another, called a *principal*, in dealings with third persons." 18 G.C.A. § 20101. "An agent may be authorized to do any acts which his principal might do, except those to which the latter is bound to give his personal attention." 18 G.C.A. § 20201.

However, despite an agent having broad authority to act on behalf of a principal, there are limitations on agent actions. "An authority expressed in general terms, however, broad, does not authorize an agent . . . [t]o act in his own name, unless it is the usual course of business to do so; [t]o define the scope of his agency; or [t]o do any act which a trustee is forbidden to do by [Part 8, Chapter 65, Article 2] of this Title."[1] 18 G.C.A. § 20219. Agents are "bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the [principal]

---

[1] The language of the statute directs to Part 4, Chapter 25, Article 2 of Title 18, but Chapter 25 of Title 18 does not exist. The Court found that the statute had been moved to Part 8, Chapter 65, Article 2 of Title 18 which is labeled Trusts in General. This is clearly the statute that is referenced because it discusses what trustees can or cannot do.

by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." 18 G.C.A. § 65201.

The power of attorney in the Contract created a legal duty Bhojwani owed to Henly. The Contract created an agency relationship by creating the power of attorney. Under the Contract, Bhojwani was granted authority to act as Henly's agent. That relationship, however, did not grant Bhojwani the ability to sign on behalf of Henly in any circumstance, no matter how broad the grant of authority. Bhojwani's use of the power of attorney was tempered by the legal duty he owed to Henly.

Henly has provided sufficient facts to show that Bhojwani may have violated his legal duty to Henly by unilaterally cancelling the Contract. Bhojwani, using the power of attorney granted under the Contract, signed the Contract's cancellation on behalf of Henly. The cancellation of the Contract would not be to Henly's benefit. Neither party claims that Henly would have agreed to the cancellation or that Bhojwani sought Henly's agreement. The cancellation would significantly weaken any property rights Henly might have in Lot 6. The cancellation of the Contract is the main claim Bhojwani makes to evict Henly from Lot 6. These facts indicate that Bhojwani was not acting with the "highest good faith" towards his principal as required by statute. 18 G.C.A. § 65201. This casts the cancellation in significant doubt of validity. And, therefore, the Court cannot grant summary judgment in favor of Bhojwani. Because Bhojwani states that Henly must vacate the property because the Contract has been cancelled, the Court also cannot make this determination at this time.

**III.    Damages are sufficiently disputed.**

Henly argues that the damages are sufficiently disputed as to make summary judgment inappropriate. Henly points to the incomplete record of payments as evidence of this. Bhojwani argues that he has remedied the incomplete record of payments and that this should not preclude summary judgment. The Court agrees that Bhojwani should receive damages for Henly's failure to make a complete payment under the Contract but cannot at this time determine what the damages owed to Bhojwani are.

Under 20 GCA § 2207, damages for a breach of a contract to buy real property are "deemed to be the excess, if any, of the amount that would have been due to the seller, under the contract, over the value of property to him." "No damages can be recovered for a breach of contract which are not clearly ascertainable in both their nature and origin." 20 GCA § 2202.

Here, Bhojwani has not presented sufficient facts to determine damages. Both parties indeed agree that Henly stopped paying per the terms of the Contract. However, the parties do not agree on what amount Henly has paid. Henly states that he has paid more than Bhojwani claims and presents two receipts that show additional payments that Bhojwani did not initially report. Though Bhojwani did later state that those additional payments are reflected in his accounts, it casts doubt on whether all receipts have been presented at this time.

Additionally, the value of Lot 6 and the Contract are in doubt. Henly claims that he has already paid a sufficient amount to cover the value of the property. Bhojwani claims Henly hasn't presented sufficient evidence of the value of the property, but has not presented evidence himself of what the property is worth. Henly denies signing an additional contract that would increase the value of the original Contract of Sale, but Bhojwani argues that Henly did sign the

additional contract and that Bhojwani owes additional interest under the Contract. And in addition to the money owed under the Contract, Bhojwani requires Henly to leave the property.

Therefore, the Court cannot make the determination of what the damages should be. The statute calls for damages to be the amount due to the seller under the contract subtracted by what the buyer has paid. The facts needed to make this determination are so indefinite as to make this determination impossible for the Court to make at this time. It is unclear what Henly has paid. It is unclear what is owed under the Contract because it is not clear whether Henly agreed to the additional payment. And, Bhojwani cannot ask for both Henly to pay him the amount under the Contract and to leave the property. If the Court were to rule that Henly leave the property and pay Bhojwani the remainder due under the Contract, Bhojwani would receive both the benefit of the Contract and the property, which is more than what the statute grants. Therefore, Bhojwani has not submitted sufficient facts to grant summary judgment on this claim.

## CONCLUSION

Therefore, the Court **GRANTS** in part and **DENIES** in part Bhojwani's Motion for Summary Judgment. The Court grants that the Contract of Sale is valid and that Henly violated that contract by failure to pay the entire amount owed under the Contract. However, the Court cannot determine at this time whether the cancellation was valid, whether Henly should be evicted from Lot 6, and the amount owed by Henly in damages.

**SO ORDERED**, this ___7/23/26___.

_____
**HONORABLE JOHN C. TERLAJE**
**Judge, Superior Court of Guam**

Page 13 of 13